AUSEY WOOLDRIDGE v. THE STATE.

No. 14602. Delivered January 13, 1932.
Rehearing Granted June 24, 1932.
Reported in 51 S. W. (2d) 727.

The opinion states the case.

The opinion states the case.

*Callaway & Callaway,* of Brownwood, and *Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE. — Conviction for possessing intoxicating liquor for purposes of sale; punishment, one year in the penitentiary.

Officers having a search warrant searched appellant's house and premises. The sheriff testified that he found a demijohn with about seven gallons of whisky in it sitting in the bathroom with the cork out and a syphon inserted; also in said bathroom were two cases of empty pink flasks. He further said that he found sixteen halfgallon jars filled with whisky, one gallon jar partly full of whisky, three pint flasks filled with

the same liquor, also a quantity of corks, ten or fifteen pounds of paper bags, two funnels, two rubber syphons, a case of canned malt, and several empty kegs near the barn, each of which showed to have contained whisky. He testified that appellant was not at the house, but that his wife was. Another state witness said the two cases of whisky flasks, the paper sacks, funnels, etc., were found in a different room from the one in which the demijohn of whisky was.

Appellant did not testify, but introduced witnesses attempting to show that the whisky was in the possession of a boy who roomed at appellant's place. This issue was pertinently submitted to the jury who were told that if they believed the whisky found by the officers was in the possession of Covington, or if they had a reasonable doubt thereof, they should acquit. The jury were also told that unless they believed beyond a reasonable doubt that the whisky found by the officers, if any was found, was possessed by appellant, they should acquit. Appellant's chief insistence is that the evidence is not sufficient to support the verdict of guilty. He cites several cases which we notice briefly.

Mathis v. State, 100 Texas Crim. Rep., 509, 272 S. W., 204. In this case the finding of some whisky buried under the dirt floor of a garage belonging to others,—but where appellant kept his car,—which garage was open at both ends and not kept locked; and it being also shown that in some nearby rooming house where appellant stayed other men also roomed,—these facts were not deemed sufficient to support the conviction.

Curry v. State, 102 Texas Crim. Rep., 572, 278 S. W., 855. In this case whisky was found in a cotton seed house. Three other men and two other adult persons lived in the residence with appellant, all apparently having equal rights and privileges to have and control personal property on the premises. Nothing pointed to appellant as the owner or possessor with more pertinence than to others. We held the evidence not enough to support the conviction.

Heeter v. State, 103 Texas Crim. Rep., 399, 281 S. W., 565. In the opinion on rehearing, the facts in this case were held sufficient, but close.

Battles v. State, 108 Texas Crim. Rep., 511, 1 S. W. (2d) 888. The evidence in this case failed to show that any intoxicating liquor was found on premises owned or controlled by appellant.

Bridwell v. State, 111 Texas Crim. Rep., 546, 15 S. W. (2d) 12. The facts in this case showed that a small quantity of liquor was found at the home of appellant, four pints being found in a ceder chest filled with women's clothes, and two pints being found under the door step; it appearing that beside women other men lived in the same house, one of whom was named in the affidavit for search warrant as engaged in the manufacture of liquor at said place, and it being not shown that appel-

lant had been at said house for a month, or that he was in the community at any time while liquor was made or possessed on said place, the evidence was held insufficient.

Watson v. State, 114 Texas Crim. Rep., 117, 24 S. W. (2d) 830. This court held the evidence insufficient. The accused, a woman, was found alone at a house where a quantity of beer was located. She testified that it was made by her husband over her protest, and it was shown also that he was under indictment for making said liquor.

In the case before us it was shown that appellant operated a service station, and had at least two boys working for him, both of whom stayed at his house. Stewart, one of these boys, testified for the defense that the other boy, Covington, drove a car for appellant, and had only been staying at the house for about three weeks, and that on the morning of the day when the raid was made, Covington called him into the bathroom at appellant's house, opened the door of a closet and showed witness "a bunch of liquor" and said it was his. Stewart said there were two five-gallon jugs and some half gallon jars. Apparently this was all he saw, if he saw anything. He said Covington used the bathroom closet for keeping his clothes. He also testified that he, witness, used the bathroom all the time and had never seen the liquor before; that he slept at the house the night before, but that appellant did not. He testified that appellant slept at the service station most of the time, and that he did not tell appellant about the whisky.

Appellant's wife testified that the room of the Covington boy was across the hall from the bathroom, but having no closet in it Covington used the bathroom closet. She further testified that Covington told her the night before the raid that he had stored the whisky in the closet, that she told him to get it out, and he said he would as soon as he could. She said she did not tell appellant of the whisky, and, as far as she knew he did not know about it.

We need not call attention to the easily discerned differences which are most material, between this case and those cited by appellant above referred to.

In this case the only persons having access to appellant's house, aside from his family, which consisted of his wife and young children, were two boys, appellant's employees, ages unknown, subject to his direction and having no equality or parity of control over property on said premises. It might be asked where was appellant at breakfast time the morning of the day of the raid? Where was he during that morning? Where was he at the noon mealtime that day? How account for the syphon in the ten-gallon whisky container sitting on the floor of the bathroom "in plain view" as testified to by the sheriff? How account for the corks, the funnels, the cases of empty pint bottles, empty kegs smelling of whisky, etc.? There were grave discrepancies in the defensive testi-

mony, aside from the general improbability that a boy, working for one supposed to be a good citizen, would take about twenty gallons of whisky in many containers, together with corks,. funnels, cases of empty flasks, syphon, cases of canned malt, etc., to the house of his employer soon after beginning his service, and at once inform the wife of such employer of such fact. We think the jury not unwarranted in their conclusion, nor that the trial judge, who saw and heard the witnesses, abused his discretion in overruling the motion for new trial.

We find in the record no bills of exception complaining of any matter of procedure. Appellant asked five special charges, the correctness of whose refusal appears so manifest as not to call for any discussion.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—On the 20th day of September, 1930, the dwellinghouse of the appellant was searched. A quantity of whisky was found, estimated at seventeen gallons. A part of it was in a demijohn, and part of it was in jars and bottles. There were about two dozen empty pint flasks and a number of corks; about fifteen pounds of paper bags, two funnels, two rubber syphons and some canned malt. The officer said that he passed through a hall, on the left of which was a. bathroom in which the demijohn was setting, and a syphon in it. The cases of whisky bottles were there. In the barn were several empty cases bearing evidence of having contained whisky. The appellant was not at home at the time, but his wife was there.

Lawrence Stewart testified for the appellant in substance as follows: He was working for the appellant and running a service station for him. He was boarding at the home of the appellant. Junius Covington, another boy, roomed there. The rooms of Covington and the witness were separate. Covington had lived in the neighborhood for about a month. He was driving a car for the appellant. Early in the morning before the raid was made, Covington was at the Wooldridge home and asked the witness if he wanted a drink of liquor. The witness, who was in his room, declined the liquor. Covington, opened the closet, exhibited a quantity of liquor to the witness, including a large jug and a number of jars. Covington's room was across the hall from the bathroom or closet in which the liquor was situated. The room was used by Covington, and he said that the liquor belonged to him. Wooldridge was not there at the time. The witness did not know where the whisky came from. It was not there on the day before. The witness used the bathroom but had never seen the whisky there until the time mentioned, when it was exhibited to him by Covington on the morning before the raid. The witness slept at the Wooldridge home the night before he

saw the whisky. Wooldridge did not stay there that night but stayed at the station. He had been at the filling station, and stayed there most of the time at night. He was not at home at the time that the witness was shown the whisky, and did not tell Wooldridge that he had seen the whisky.

The appellant's wife testified that her family, besides herself, consisted of two boys and two girls. They were keeping boarders. One of them was Lawrence Stewart, and the other was Junius Covington. Stewart was the boy who testified upon the trial. They occupied separate rooms. Covington's room adjoined the bathroom across the hall. He had access to the bathroom. He had no closet in his room. There was a closet in the bathroom which was used by Covington, but not used by the family of the appellant. The witness did not know the whisky was there until she was told of it by Covington. She was informed by Covington about 8:30 o'clock on the night previous to the raid. Covington said that he had stored some whisky in the closet and was told by the witness to get it out. He promised to do so as soon as possible. The witness did not know that Covington had brought liquor to the house, but learned of it after it had been brought there by Covington. The appellant was not at home that night. He had a bed at the filling station and frequently stayed there at night. She had not informed her husband that the whisky was in the house. So far as she was aware, he had no knowledge of the presence of the whisky in the house. The foregoing is a synopsis of all the testimony.

The conviction rests upon circumstantial evidence. It was the state's burden to prove that appellant possessed the liquor; also that he possessed it for sale.

The evidence introduced by the state discloses that a quantity of whisky, some empty flasks, funnels and a syphon were found in the bathroom of appellant's dwelling. The appellant was not present at the time of the discovery. In the barn there were some empty jugs which bore the odor of whisky. It affirmatively appears that the appellant was not present at the time the criminative facts were discovered. There is an absence of evidence on the part of the state touching the whereabouts of the appellant. It does not appear from any fact proved by the state that the appellant was in the county or in the state. It was merely proved that the whisky and equipment found were in the house in which he lived. Dealing with the facts proved by the state alone, and having in mind the principles of circumstantial evidence, it is not thought that the measure of proof was met; that is, proof beyond a reasonable doubt that the appellant possessed the liquor, excluding every reasonable hypothesis save that he possessed it, and demonstrating his possession of it to a moral certainty. The evidence introduced upon behalf of the appellant is exculpatory to the effect that other persons lived in the house; that the whisky was placed

there by another person and belonged to another person; that the appellant had not been present since it was placed there. Of course, the jury was warranted in disbelieving the testimony introduced upon behalf of the appellant, but if note of the state's evidence alone is taken, it is regarded as inconclusive, when tested by the law of circumstantial evidence, to justify the verdict of conviction.

For the reasons stated, the motion for rehearing is granted; the order of affirmance is set aside, the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*